UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ANTHONY KEITH VALENTINE,

              Plaintiff,

      - against -

WARDEN CAMERON LINDSAY, SAFETY
DIRECTOR MR. BUTLER, HEALTH SERVICE
ADMINISTRATOR MR. R. CAMPOS,
ASSISTANT HEALTH SERVICE
ADMINISTRATOR MR. M. ITTAYEM,
P.A. MS. MITCHELL, UNIT TEAM MANAGER
MR. B. BEARD, COUNSELOR RAYMOND
KAUFMAN, COUNSELOR MS. J. ANDERSON,
LT. PARBONE, LT. G. GUIMOND, and
OFFICER J. FLORES,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>MEMORANDUM AND
ORDER</u>
10-CV-868 (JG)(JMA)


        ANTHONY KEITH VALENTINE
                Federal Correctional Complex Beaumont
                P.O. Box 26030
                Beaumont, TX 77720-6030
                Plaintiff, *pro se*

        LORETTA E. LYNCH
                United States Attorney
                Eastern District of New York
                271 Cadman Plaza East
                Brooklyn, New York 11201
        By:    Orelia E. Merchant
                *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

Anthony Valentine brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971),[1] for injunctive relief and damages arising from injuries to his hand and leg sustained while he was incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, as well as for having allegedly been deprived of access to a handicap-accessible shower. He further alleges under 42 U.S.C. §§ 1981, 1985, and 1986 a conspiracy to interfere with his civil rights. Reading his complaint liberally, I also find that he alleges each of these claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). Defendants Lindsay, Ittayem, Beard, Kaufman, Anderson, Parbone, Guimond, Flores, Campos, and Mitchell[2] have moved to dismiss the complaint, or in the alternative for summary judgment.[3] For the reasons stated below, I grant the defendants' motion to dismiss.

BACKGROUND[4]

From August 2006 through February 2009, Valentine was an inmate at the MDC in Brooklyn, which is run by the Federal Bureau of Prisons ("BOP"). While there he suffered several injuries that ultimately led to this law suit.

---

[1]     Although Valentine also invokes 42 U.S.C. § 1983, his claims are exclusively federal and are therefore appropriately construed as *Bivens* claims only. *See Bordeaux v. Lynch*, 958 F. Supp. 77, 83-84 (N.D.N.Y. 1997) (converting putative § 1983 claim mistakenly brought against federal officials to *Bivens* claim, "the federal counterpart to Section 1983").

[2]     While initial service attempts on Campos and Mitchell were unsuccessful and therefore they did not appear in time for the oral argument, they were subsequently served and sought leave to join in the current motion. *See* Docket Nos. 73, 80, 82, 83, 84, 85. Because I can see no prejudice to the plaintiff if I permit Campos and Mitchell to join the already-existing motion, I grant both defendants leave to join in the original motion to dismiss or for summary judgment.

[3]     Safety Director Butler appears not to have been properly served and so is not a party to this action. *See generally* Docket Sheet.

[4]     The facts in this section are presented in the light most favorable to Valentine, and are undisputed unless indicated otherwise.

A.     *Valentine's Injuries*

1.     *The Hand Injury*

On January 4, 2007, while was playing basketball in the MDC's recreational area, Valentine suffered an injury to his left hand that was later determined to be a broken metacarpal bone. He was examined several hours later in the MDC infirmary by Tunesia Mitchell, a physician's assistant. Valentine alleges that Mitchell, by "pulling and squeezing [his] injured hand," determined "without tak[ing] one x-ray" that the hand was not broken. (Compl. ¶ 7.) Mitchell then wrapped Valentine's hand, gave him pain medication, and sent him back to his unit. (*Id.*)

Five days later, on January 9, 2007, Valentine was taken to the Lutheran Medical Center in Brooklyn for an examination by Dr. Erkin Seytnazarov. (*Id.*) Seytnazarov diagnosed Valentine with a metacarpal fracture, prescribed rest, elevation, ice, and Motrin, and instructed him to follow up with a hand surgeon within three to four days. (Exh. G at 6.[5]) However, he was not taken to see a hand surgeon until a month later, on February 9, 2007, at which point he was prescribed physical therapy. (*See* Rule 56.1 Statement ¶ 56-57.) He attended two physical therapy sessions in March of 2007, but those sessions abruptly ceased because the MDC lost its in-house physical therapy contract. (Compl. ¶ 7.)

2.     *The Leg Injury and the Shower Claim*

a.     *The Leg Injury*

On August 24, 2008, Valentine again sustained an injury playing basketball -- this time, to his leg. He was taken by stretcher to the medical services wing of the MDC where he was seen by physician's assistant J. St. Preux,[6] who "also had no idea of what type of injury

[5]     Citations to "Exh. __" refer to exhibits in the McFarland Declaration.
[6]     P.A. St. Preux is not a defendant in this lawsuit.

3

[Valentine] had." (Compl. ¶ 9.)[7] St. Preux "gave [Valentine] pain-killers, sent [him] back to [his] unit in a wheel chair." (*Id.*) Valentine was subsequently diagnosed with a nontraum rupture of the Achilles tendon, and underwent surgery to repair the tear on September 17, 2008. (Rule 56.1 Statement ("R. 56") ¶¶ 84, 91.) He received "a few sessions" of physical therapy for his leg injury at Kingsbrook Jewish Medical Center. (Compl. ¶ 9.)

      b.    *Access to Handicap-Accessible Sanitary Facilities*

Valentine alleges that during the time he was confined to a wheelchair or restricted to ambulating on crutches, from August 24, 2008 to October 15, 2008, he was not provided with a handicap-accessible shower (the "shower claim"). Shortly after his injury, upon realizing that the handicap-accessible shower in his housing unit was out of order, he requested to use the shower in another unit. However, when he was taken to the other unit he found that that shower too was out of order. He then submitted informal grievance forms (known as "BP-8s" or "cop-outs") on August 26, September 15, October 7, and October 9, 2008, asking MDC staff to provide him with access to a shower. For part of that time, between September 22 and October 2, 2008, he was in the Special Housing Unit ("SHU"), where his cell had a foot-high partition that caused him difficulty due to his cast. (Compl. ¶ 9.)

On October 14, 2008, shortly after he was returned to his unit from SHU, Valentine approached unit team manager Beard about the problem. Valentine was referred to safety director Butler, who allegedly responded "it will be taken care of." (*Id.*) The next day, after almost two months of being unable to bathe, Valentine attempted to wash in a shower stall that was not handicap-accessible. His injured leg could not hold him, and he fell. He sustained injuries to his back, head, and neck, for which he was treated in the prison infirmary. (*Id.*; *see*

---

[7]      The government notes that Valentine was diagnosed by "the PA" with a contusion of the calcaneus tendon and prescribed oxycodone, acetaminophen and ibuprofen. (*See* R. 56 ¶ 80.)

Rule 56.1 Statement ¶ 95 (noting that Valentine had "injured the right side of his head while getting out of the shower" and had sustained "abrasions, contusions, trauma and inflammation" as a result of the fall).)  He also developed various skin problems and rashes due to his prolonged inability to clean himself, some of which remain to this day.  (Exh. H at 4.)

B.      *Valentine's Pursuit of Administrative Remedies*

     1.      *The Hand Injury*

          a.      *Internal MDC Grievance System*

On October 12, 2008, Valentine submitted a BP-8 to prison officials regarding the hand injury.  According to Valentine the complaint went unanswered.  (Compl. ¶ 7.)  He resubmitted his BP-8 on March 14, 2008, April 21, 2008, and June 12, 2008, but received no response.  (Compl. ¶¶ 7-8.)  He also submitted two cop-outs directly to Warden Lindsay on May 5, 2008.  (Compl. ¶ 8.)

On November 10, 2008, Valentine began the formal BOP grievance process by submitting a form known as a BP-9 to Warden Lindsay.  (McFarland Decl. ¶ 17; *see* Exh. C at 2.)  The form sought follow-up medical care for Valentine's broken hand.  The BP-9 was rejected the same day because (1) he had not submitted the form through his counselor as prison regulations required, and (2) he had not attempted (or presented evidence of an attempt at) informal resolution via a BP-8.  He was advised to resubmit his BP-9 within five days through the proper channels and to attach evidence of any informal attempts at resolution.  However, prison officials also forwarded his BP-9 to the MDC's Health Services department for review and appropriate action.  (McFarland Decl. ¶ 17; Exh. C at 2.)  As instructed, Valentine timely refiled his BP-9 on November 14, 2008, but on December 30, 2008 it was rejected for the stated

reason that he had already received the requested treatment.  (McFarland Decl. ¶ 18; *see* Exh. C at 2.)

On January 20, 2009, Valentine timely filed a BP-10 form with the BOP regional office appealing the denial of his BP-9.  This appeal was denied on February 19, 2009, for the stated reason that he had already received the prescribed treatment.  (McFarland Decl. ¶ 19; *see* Exh. C at 3.)

On April 21, 2009, Valentine appealed the denial of his BP-10 using a form known as a BP-11, which he filed with the general counsel of the BOP.  (McFarland Decl. ¶ 21.) On May 1, 2009, the appeal was rejected as untimely, and Valentine was advised to resubmit the BP-11 with a notice on BOP letterhead indicating that the untimeliness was not his fault.  (*Id.*; *see* Exh. C at 4.)  Valentine resubmitted his BP-11 without alteration or explanation on May 18, 2009, and it was again rejected as untimely on May 30, 2009 with the same instruction giving him an opportunity to explain his untimeliness.  (McFarland Decl. ¶ 22.)  Valentine resubmitted his BP-11 for the third time on June 16, 2009, still without the required explanation, and on August 21, 2009, the BP-11 was denied and closed.  (*Id.* ¶ 24.)[8]  Valentine filed no further BOP administrative grievances regarding his hand injury.

b.  *FTCA Remedies*

On August 28, 2008, Valentine filed an administrative claim regarding his hand injury with the BOP's regional office, pursuant to the exhaustion requirement of the FTCA.  The claim made substantially the same allegations as the complaint in the instant action: that he was

---

[8]      These facts regarding Valentine's BP-9s, BP-10, and BP-11s are drawn from the McFarland Declaration at paragraphs 17-25 and Exhibit C, which contains the BOP's computer records of Valentine's administrative remedy submissions.  According to the complaint, Valentine submitted four BP-8s that went unanswered, but he took no further action.  (Compl. ¶¶ 7-8.)  However, Exhibit C indicates that Valentine's account is inaccurate, and that he did in fact submit the necessary paperwork to begin the process of exhausting the prison grievance process.

"not provided timely nor appropriate medical care for an injury suffered to [his] left hand . . . at the [MDC] on January 4, 2007." (Exh. F at 1.) His principal complaints were that "the administration at MDC . . . disregarded the importance" of Dr. Seytnazarov's recommendation that Valentine's wrist "would need surgery within 3-4 days" of the injury, and did not take him for surgery until five weeks later, at which point surgery was no longer a viable treatment option. (*Id.* at 4-5.) He also alleged that he had not received sufficient physical therapy, and stated his belief that "the administration at MDC Brooklyn is at fault for [his] current physical condition." (*Id.* at 5.)

The BOP denied the claim on February 23, 2009. (*Id.* at 1.) It determined that Valentine was "provided with the necessary and appropriate emergent care" after the injury, and given "follow up care with a hand surgeon on two occasions, provided physical therapy, and provided medication for pain." It further noted that Valentine had "not provided evidence that the MDC Brooklyn Health Services Department acted negligently or otherwise denied [him] appropriate medical care." (*Id.*) The denial notice instructed Valentine that if he wished to appeal the BOP's decision he should bring suit against the United States in the appropriate United States District Court within six months of the date of the denial (*i.e.*, prior to August 23, 2009). (*Id.*) Valentine took no further action on this FTCA claim until the current suit was filed on February 3, 2010, more than eleven months after the final administrative denial.

2. *Leg Injury*

a. *Prison Grievance System*

Although Valentine submitted several cop-outs regarding treatment of his leg and the shower claim, he did not file an official grievance with the prison over either claim. (*See*

Rule 56.1 Statement ¶ 14.) Therefore, he indisputably failed to exhaust his remedies within the MDC internal grievance system.

        b.    *FTCA Remedies*

        On April 20, 2009, Valentine filed an FTCA administrative claim with the BOP regional office regarding both his leg and the shower claim. His allegations were similar to those laid out in the complaint. He alleged that P.A. St. Preux "had no idea what type of injury I sustained," gave him Tylenol and a wheelchair, and sent him back to his unit. He further alleged that "[d]ue to the lack of medical attention for this serious injury, [he] had surgery a month later [and] now suffer[s] from a permanent limp." (Exh. H at 4.)

        In his administrative claim, Valentine also alleged that he had been denied the use of a handicap-accessible shower for nearly two months, and that as a result he had developed rashes on "various parts of [his] body." He noted that he had "suffered additional injuries after [his] fall on Oct. 15, 2008," and that he is now disabled. (*Id.* at 5.) His claim was denied on October 16, 2009 because "[t]he Health Services Department provided the necessary and appropriate urgent care and follow up treatment with regard to [his] injury. There is no evidence to suggest [that he] experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons' employee." (*Id.* at 4.) He was instructed to file suit in federal court, if desired, on or before April 16, 2010.

C.    *The Current Action*

        Valentine filed his complaint on February 3, 2010.[9] The lawsuit consists of two claims. In his first claim, regarding his hand injury, Valentine alleges that he continues to

---

[9]    Valentine submitted two additional filings in this case prior to oral argument that I deem to have been deemed incorporated into his complaint. (*See* Orders of Magistrate Judge Joan Azrack, Aug. 17, 2010.) The first, a motion to amend the complaint (Docket No. 24), added more detailed financial damages allegations for each of Valentine's claims. The second, deemed a "motion to amend jurisdiction" (Docket No. 25), adds an allegation that some unspecified party has conspired to violate Valentine's civil rights.

experience pain and swelling. He further states that "[t]he slightest touch really gives [him] great pain," and that because of his injury he "can't exercise and play sports or hold my children like a normal person." (Compl. ¶ 8.) He estimates that the "percentage of loss to complete body is no lower than 30%." (Motion to Amend Complaint ¶ 1.) Valentine's second claim covers the leg injury and the shower claim. (Compl. ¶¶ 9-10.)

Valentine demands $60,000 in damages for his hand injury, $60,000 in damages for his leg injury and denial of access to a shower, $60,000 in damages for the injuries sustained when he fell in the shower, and "compensatory relief" of $2000 per day for "(1) Pain & Suffering (2) loss of everyday privileges afforded to all Federal Inmates (3) permanent and irreparable damages and future income, and for emotional and mental distress." (Motion to Amend Complaint ¶¶ 1-4.) He further demands a reevaluation of his hand by an "outside hand specialist in [his] local area for treatment after [his] release." (Compl. ¶ 12.)

On October 13, 2010, the government moved to dismiss the case or, in the alternative, for summary judgment. Shortly thereafter, on October 19, 2010, I received from Valentine a request for preliminary injunction and a temporary restraining order ("TRO") requiring the BOP to provide him with medical services for his injured hand. (Docket No. 39.) I ordered the government to respond to Valentine's TRO request in the course of the briefing for this motion. (*See* Order of Judge John Gleeson, Nov. 1, 2010.)

I heard oral argument on January 20, 2011. I now grant the defendants' motion for summary judgment with regard to all PLRA claims, as well as the defendants' motion to dismiss all claims under the FTCA and Title 42. The plaintiff's application for injunctive relief is denied.

DISCUSSION

A.    *The PLRA Claims*

        The Prison Litigation Reform Act was instituted to regulate inmate lawsuits

regarding matters related to their confinement.  It provides that "[n]o action shall be brought with

respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted."[10]  42 U.S.C. § 1997e(a).  *Bivens* actions, which seek to impose

liability on BOP employees in their individual capacity, are subject to the PLRA.  *See Porter v.*

*Nussle*, 534 U.S. 516, 520 (2002); *Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007).

        1.    *Exhaustion Under the PLRA*

        Proper exhaustion of administrative remedies is mandatory under the PLRA.

*Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 211

(2007) ("There is no question that exhaustion is mandatory under the PLRA and that

unexhausted claims cannot be brought in court.")).  To properly exhaust a claim, an inmate must

"complete the administrative review process in accordance with the applicable procedural rules."

*Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see id.* at 93 ("We are persuaded that the PLRA

exhaustion requirement requires proper exhaustion.").  A federal inmate must strictly follow the

procedural rules of the BOP -- namely, the four-step grievance process described below.  *See*

*Johnson*, 569 F.3d at 45.  "[U]ntimely or otherwise procedurally defective attempts to secure

administrative remedies do not satisfy the PLRA's exhaustion requirement."  *Ruggiero v. Cty. of*

*Orange*, 467 F.3d 170, 176 (2d Cir. 2006).  Accordingly, where a claim is denied for a

---

[10]        Although Valentine was a pre-trial inmate for a portion of the time at issue, *see* Docket Sheet, 06-
CR-580-5(JSR), the PLRA applies equally to pre-trial inmates and inmates who have been convicted.  *See* 42 U.S.C.
§ 1997e(h) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility
who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms
and conditions of parole, probation, pretrial release, or diversionary program.").

procedural reason, rather than on the merits, it has not been properly exhausted for PLRA

purposes.  *See Woodford*, 548 U.S. at 90.

2.      *The Summary Judgment Standard*

Because the parties have a factual dispute over whether Valentine properly

exhausted his administrative remedies (Opp. at 2), I decide the question of PLRA exhaustion on

the defendants' motion for summary judgment.  Summary judgment may be granted where the

evidence shows that there is "no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of establishing that no genuine

issue of material fact exists.  *Baisch v. Gallina*, 346 F.3d 366, 371 (2d Cir. 2003).  I must view

the evidence in the light most favorable to the nonmoving party, *see Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970), and in the case of a *pro se* plaintiff I must construe the plaintiff's

claims liberally, *see Sawyer v. Am. Fed'n of Gov't Empl'ees*.[11]  I conclude that there is no

genuine issue of material fact as to Valentine's failure to exhaust his internal prison remedies,

and therefore grant summary judgment for the defendants.

3.      *The Administrative Remedy Program*

The Administrative Remedy Program ("ARP") in the BOP, which dictates the

procedure that inmates must follow in order to exhaust their remedies, consists of four tiers.  *See*

28 C.F.R. § 542.10 *et seq*.  Inmates must first attempt an informal resolution of their problem by

filing a BP-8.  *See id.* § 542.13(a).  If the BP-8 is denied or goes unanswered, the inmate must

begin the formal grievance process by filing a BP-9 with the prison warden within 20 days of the

---

[11]      I may grant summary judgment in a *pro se* case only when the plaintiff has received adequate
notice that a failure to respond or to provide evidence to support his case may result in its dismissal on the merits.
*See* Local Rule 56.2.  Although the defendants' initial written notice to Valentine was not placed on the docket
sheet, given defense counsel's statements at oral argument I am satisfied that Valentine has received such notice.
*See also* Docket No. 83 (required notice form for supplemental motion to dismiss).

incident that sparked the grievance. *Id.* § 542.14(a). An inmate who is unsatisfied by the warden's response to his BP-9 may appeal the ruling using a BP-10, which must be filed with the BOP's regional director within 20 days of the date on which the warden signed his response. *Id.* § 542.15(a). An appeal from a BP-10 must be filed with the general counsel for the BOP within 30 days of the BP-10's denial, using the form BP-11. *Id.* Delays in filing appeals may be excused where an inmate demonstrates that there has been a valid reason for the delay. *Id.* An inmate must properly exhaust this entire process prior to beginning a claim against the BOP or its employees under the PLRA. *See Woodford*, 548 U.S. at 93-94.

4.      *Valentine Failed to Properly Exhaust His Remedies*

There is a dispute between Valentine and the defendants as to whether Valentine properly exhausted his administrative remedies. In such situations the Second Circuit has held that the proper inquiry is whether "(1) 'administrative remedies were in fact available to the prisoner'; (2) 'the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense'; and (3) 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Chavis v. Goord*, 333 Fed. App'x 641, 643 (2d Cir. 2009) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (quotation marks omitted)). Under *Chavis* and *Hemphill*, and considering the facts provided by the defendants as to Valentine's history of filing for administrative remedies, I find that Valentine has not properly exhausted his remedies for the purpose of the PLRA.

a.      *The Hand Injury*

Valentine failed to exhaust his administrative remedies with regard to his hand injury.  Although he filed BP-9 and BP-10 complaints that were decided on the merits, his BP-11 form was not timely filed.  He was given two opportunities to correct his untimeliness (*see* Rule 56.1 Statement ¶¶ 23-30), but he instead twice resubmitted the same BP-11 without explanation. On its third iteration, the BP-11 was closed for failure to timely file.  Because his BP-11 was not decided on the merits, and because Valentine had the opportunity to correct his error but did not do so, he has not properly exhausted his administrative remedies pursuant to the requirements of the PLRA.

Valentine's failure to properly exhaust his remedies cannot be excused by *Hemphill*.  He alleges two factors that may have caused administrative remedies to be unavailable to him in practice: First, he claims that prison officials were unresponsive to his BP-8s.  (Compl. ¶ 7.)  Second, he alleges various comments and threats he received from prison officials after he began attempting informal resolution.  (Compl. ¶ 8.)  He claims that on May 19, 2008, Defendant Beard said to him, "as a result of [his] mentioning Mr. Kaufman's name on the cop-outs," that "you're jerking rec [sic] and you're not going to like me after today."  Later that day, Valentine alleges, Defendant Kaufman terminated him from kitchen duties, and subsequently informed Valentine that "things that are written and said about [him], gets [sic] back to [him]."  (*Id.*)  He also alleges that when he asked Defendant Ittayem for help, Ittayem responded, "withdraw your BP-9 and we will take care of you" -- to which Valentine responded with "no, I will not withdraw my BP-9!"  (Motion for TRO ¶ 32.)

Valentine's allegation that Beard, Ittayem, and Kaufman dissuaded him from pursuing the administrative grievance system[12] is belied by the fact that he successfully pursued the first three tiers of the four-tier ARP -- including a BP-8 filed on June 12, 2008 -- *after* the alleged threats from those three defendants. (Compl. ¶ 8.) The defendants have shown that he filed a timely BP-9 and BP-10. He makes no allegation that BOP officials' delays or threats, which occurred eleven months before he filed his BP-11, caused that appeal to be filed after the deadline. Even reading the complaint liberally, as I must do, the fact that Valentine was able timely file the first three steps of the grievance process demonstrates that it was not the "behavior of the defendants" that "render[ed] administrative remedies unavailable," *Hemphill*, 380 F.3d at 686, but Valentine's own failure to timely file his BP-11.[13] Valentine has not created a genuine issue of material fact regarding his access to prison remedies.

b.     *The Leg Injury and the Shower Claim*

Valentine has also failed to establish that he has exhausted his administrative remedies with regard to his leg injury or the prison's alleged failure to provide him with a handicap-accessible shower. (*See* Compl. ¶¶ 7-8.) Although he alleges that he orally informed various corrections officers that he required a handicap-accessible shower and physical therapy for his leg, he did not properly pursue his claim in the MDC's established administrative process. He never began the formal grievance process by filing a BP-9, nor does he make any attempt to

---

[12]     Although Valentine does not specifically allege that the defendants' statements precluded him from being able to access the ARP, I am obligated to read his complaint liberally and I therefore construe the statements as the type of improper behavior that the first prong of *Hemphill* was meant to address. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

[13]     At oral argument Valentine explained that he had moved between prison facilities shortly prior to filing his BP-11 and that therefore his untimeliness should be excused. I am permitted to overlook Valentine's failure to properly exhaust his remedies if I deem his relocation to be a "special circumstance" justifying late filing. *See Ruggiero*, 467 F.3d at 175; *Hemphill*, 380 F.3d at 686. However, Valentine was given several chances to explain his untimeliness when refiling his BP-11, but did not mention a facility move, or, indeed, provide any reason for his untimeliness. I accordingly decline to excuse his failure to properly exhaust his remedies as required by the PLRA.

explain his failure to do so.  He makes no allegations that he was precluded from filing a BP-9 or higher or that administrative remedies were unavailable for any reason.[14]  The *Hemphill* factors therefore do not apply here.

Because Valentine failed to exhaust his administrative remedies with regard to his hand and leg injuries and his conditions of confinement, his *Bivens* claims against all defendants in their individual and official[15] capacities are dismissed.[16]

B.      *The FTCA Claims*

The FTCA provides a limited waiver of the United States government's sovereign immunity, permitting plaintiffs to bring suit against the United States for torts committed by federal employees.[17]  Although Valentine does not expressly allege a claim under the FTCA, his allegations and the evidence presented by both sides -- including two FTCA administrative claims -- clearly indicate an intent to make such a claim.  Submissions of a *pro se* litigant should be construed liberally and interpreted to "raise the strongest arguments that they suggest."

---

[14]        At oral argument, Valentine explained that he thought filing an FTCA form was sufficient to also satisfy the requirements of the PLRA.  However, "[t]he belief that satisfying the FTCA's exhaustion requirements also satisfies the PLRA/ARP requirements is not a valid reason for granting an extension of time to file."  *Hartman v. Holder*, 2005 WL 2002455, at *6 (E.D.N.Y. Aug. 21, 2005) (citing 28 C.F.R. § 542.14(b)).

[15]        Even if Valentine had properly exhausted his remedies, I would dismiss his *Bivens* claims as against the prison officials in their official capacities for lack of subject matter jurisdiction.  "Because an action against a federal agency or federal officers acting in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."  *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  The doctrine of sovereign immunity bars suits against the United States without its consent.  *Id.*  Because the United States has not consented to *Bivens* suits against BOP officers, a *Bivens* claim cannot be brought against BOP officers in their official capacity.  *See Baptiste v. Warden at Ottisville* [sic]*, FCI N.Y.*, 2010 WL 3185748, at *5 (S.D.N.Y. Aug. 11, 2010); *see also Fed. Dep. Ins. Co. v. Meyer*, 510 U.S. 471, 484 (1994) (declining to extend *Bivens*-style liability to federal agencies).

[16]        To the extent Valentine's allegations regarding the handicap shower can be construed to allege a claim under the Americans with Disabilities Act (the "ADA"), that claim is dismissed as ADA violations are subject to the PLRA and thus fall prey to Valentine's failure to exhaust his ARP remedies.  *See Carrasquillo v. City of N.Y.*, 324 F. Supp. 2d 428, 442-43 (S.D.N.Y. 2004).

[17]        Although Valentine is suing various BOP employees in their official capacity, the proper party for an FTCA suit against a federal employee in his or her official capacity is the United States government.  *See Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991) ("[A] suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" (citing 28 U.S.C. § 2679(b)(1))).  Therefore I construe Valentine's claim to be against the United States for the purpose of bringing suit under the FTCA and dismiss all putative FTCA claims brought against individual BOP personnel.

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A *pro se* petition must

not be dismissed for mere failure to cite to the correct statute. *See Thompson v. Choinski*, 525

F.3d 205, 209-10 (2d Cir. 2006). I therefore read Valentine's complaint to allege a claim under

the FTCA for his hand and leg injuries, as well as his alleged lack of access to a handicap-

accessible shower.

       1.    *Exhaustion*

       Like the PLRA, the FTCA requires exhaustion of a specific set of administrative

remedies. A party wishing to bring a common-law tort suit against the United States must first

petition the administrative body that controls or comprises the governmental entity they seek to

sue -- in this case, the BOP. 28 U.S.C. § 2675. The administrative body investigates the claim

and determines whether it has sufficient merit to warrant a settlement. 28 C.F.R. § 543.30. If the

administrative body declines to settle the proposed suit and the plaintiff wishes to bring suit in

federal court, he must do so within six months of the administrative body's adverse decision. 28

U.S.C. § 2401(b).

       Valentine properly filed petitions with the BOP with regard to his hand injury and

his leg injury (which includes the shower claim). His claim for damages related to his hand

injury was denied on February 23, 2009, and his claim for damages related to his leg injury was

denied on October 16, 2009. Therefore he successfully exhausted his administrative remedies

under the FTCA for all of his claims. His claim regarding his leg injury is timely. However, his

claims regarding his hand injury are now time-barred, as he failed to file the instant lawsuit until

February 3, 2010 -- almost six months after his time to file expired. The six-month limitation

period is jurisdictional, and as such his failure to comply cannot be excused by the Court. *See*

*Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983). Valentine's claim for damages under

the FTCA with regard to his hand injury is accordingly dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[18]

    2.    *The Motion to Dismiss*

        In order to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing Valentine's claim, I construe the complaint liberally, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the non-moving party, and bearing in mind that a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly* . . . we remain obligated to construe a *pro se* complaint liberally." (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Although the complaint must be supported by more than "mere conclusory statements," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), it need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555.

        The FTCA permits federal inmates to bring suit against the United States government for torts that would be actionable at state law if the United States were an individual defendant. 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). Reading the complaint liberally, Valentine alleges that prison officials negligently failed to make appropriate provisions for his safekeeping and care, given his

---

[18]    Although this information regarding Valentine's FTCA exhaustion was presented to me in the guise of a Rule 56.1 statement, "[i]n resolving the question of [subject matter] jurisdiction, the district court can refer to evidence outside the pleadings . . . ." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007). I therefore draw these jurisdictional facts from the government's Rule 56.1 statement. *See Perez v. Hawk*, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004).

inability to stand long enough to use a standard shower stall.  He further alleges medical malpractice against various prison doctors.  Both claims were properly exhausted under the FTCA, as they were presented in a claim to the proper regional and national authorities and then timely brought to this Court after their administrative denial.  (*See* Exh. H.)

        a.     *The Medical Malpractice Claim*

Medical malpractice is a common law tort and is therefore actionable against the United States under Section 2674 of the FTCA.  For the purpose of an FTCA suit, liability is determined by state law.  28 U.S.C. § 2674; *see Metzen v. United States*, 19 F.3d 795, 807 (2d Cir. 1994).  To state a claim for medical malpractice under New York law, a plaintiff must show that (1) the defendant breached the professional standard of care in the community and (2) that such breach caused the plaintiff's injuries.  *See Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994).

Valentine has failed to state a claim for medical malpractice.  The sum total of his allegations regarding his leg is as follows: "On Aug. 24, 2008, I injured my right leg playing basketball . . . .  I was taken on a medical stretcher . . . to be seen by P.A. J. Saint Preux who also had no idea of what type of injury I had and gave me pain-killers, sent me back to my unit in a wheelchair."  In his complaint he also describes his injury as "a torn achilles tendon that received surgery . . . ." (Compl. ¶ 9.)  In a later filing, he alleges that he "had surgery for an injured leg, which confined inmate to wheelchair, crutches, and a walker."  (Motion for Temporary Restraining Order and Preliminary Injunction, Docket No. 39-3, at 1.)  In his demand for relief he focuses exclusively on his hand, requesting no relief whatsoever for his leg.  (Compl. at V.)  In a supplemental filing incorporated into his complaint, he makes no further allegations regarding his leg.  (*See* Motion to Amend Complaint, Docket No. 24, at ¶2.)

After an exhaustive search of Valentine's allegations, the Court cannot find a single instance in which Valentine either alleges that any medical professional's care for him breached a community standard of care, or that any such breach was the cause of his injuries. The sole negative comment bearing on his medical care is that P.A. St. Preux "had no idea of what type of injury I had." But the record is clear that Valentine had the necessary surgery after his injury, and that he received physical therapy during his recuperation. Even reading his pleadings liberally, as I am required to do, he makes no allegation either before this Court or in his FTCA grievance form that could plausibly state a claim of medical malpractice. The claim of medical malpractice under the FTCA is dismissed.

        b.     *The Shower Claim*

With regard to the shower claim, Valentine must surmount an additional procedural hurdle: because the prison officers' failure to make appropriate handicap-accessible facilities available to Valentine is without question a claim regarding prison conditions, the claim still falls under the PLRA and its stringent exhaustion requirements. The PLRA requires that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). According to the plain text of the statute, prison conditions claims, even those brought under the FTCA, must be exhausted through the prison grievance system. *See, e.g.*, *Arawole v. Hemingway*, 2006 WL 2506972, at *3-4 (N.D. Tex. Aug. 11, 2006) (noting that the PLRA's exhaustion requirement supplements but is not replaced by the FTCA exhaustion requirement). As discussed above, Valentine did not exhaust the shower claim pursuant to the PLRA's requirements. I therefore dismiss the shower claim.

C.    *The Title 42 Claims*

I decide Valentine's claims under Title 42 on the defendants' motion to dismiss. Because Valentine does not include facts that plausibly support his allegation that unnamed BOP officials conspired to violate his civil rights in violation of Sections 1985 and 1986, *see Twombly*, 550 U.S. at 570, or to interfere with his contractual relations in violation of Section 1981, *see id.*, the allegations contained in the "motion to amend jurisdiction" are dismissed for failure to state a claim.

D.    *Motion for Temporary Restraining Order and Preliminary Injunction*

During the pendency of this lawsuit, Valentine filed a motion for a "TRO and preliminary injunction," Docket No. 39 (Oct. 19, 2010), seeking to require prison officials to provide him with medical care for his injured hand.  A party seeking injunctive relief must show that "1) absent injunctive relief, [he] will suffer irreparable harm, and 2) either a) that [he] is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party."  *Statharos v. N.Y. City Taxi & Limousine Comm'n*, 198 F.3d 317, 321 (2d Cir. 1999) (quoting *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999)).

Valentine cannot show that he is likely to succeed on the merits, as his claims arising from his hand injury are subject to the PLRA and are barred for failure to properly exhaust the prison remedy system.  Valentine's motion for a preliminary injunction and TRO is denied.

CONCLUSION

For the reasons stated above the defendants' motion is granted in its entirety and the plaintiff's motion for injunctive relief is denied.[19]

So ordered.

JOHN GLEESON, U.S.D.J.

Dated:  August 17, 2011
        Brooklyn, New York

_____

[19]    Valentine has submitted a series of additional filings since the motion for summary judgment was filed, most of which substantially reiterate the facts and arguments he submitted with his motion papers.  Because I grant the motion to dismiss and for summary judgment, to the extent Valentine's filings request any form of relief that has not already been addressed in this opinion, any outstanding applications in Docket Numbers 39, 43, 45, 54, 55, 57, 61, 63, 70, 71, 72, 75, 76, 77, 86, and 87 are denied.